CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
HOWARD SHNEIDER (Bar No. 309492)
(E-Mail: howard_shneider@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-1456
Facsimile: (213) 894-0081

Attorneys for Defendant
JUAN MIRANDA ORTIZ

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>JUAN MIRANDA ORTIZ,<br><br>  Defendant. | Case No. MJ 25-850<br><br>**JUAN MIRANDA ORTIZ'S OPPOSITION TO GOVERNMENT'S REQUEST FOR DETENTION** |

Juan Miranda Ortiz, through counsel, files this brief in opposition to the government's request for detention on appeal from the magistrate judge's grant of bond.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: March 3, 2025         By  /s/ Howard Shneider
                                 Howard Shneider
                                 Deputy Federal Public Defender
                                 Attorney for Juan Miranda Ortiz

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION AND RELEVANT FACTS .................................................................. 1

II. LEGAL ARGUMENT ........................................................................................................ 3

    A.    This Court should not hold a detention hearing because Mr. Ortiz does not pose a serious risk of flight. ................................................................. 3

    B.    The Court may not consider danger to the community in making a determination as to whether to grant Mr. Ortiz bail. ..................................... 6

    C.    The government cannot show by a preponderance of the evidence that no combination of conditions can reasonably assure Mr. Ortiz's appearance. ........................................................................................................ 9

    D.    Even if danger to the community were a proper consideration, the government cannot show with clear and convincing evidence that no combination of conditions can reasonably assure the safety of the community. ...................................................................................................... 11

    E.    Temporary detention is not appropriate either and cannot form a basis for remanding Mr. Ortiz back to custody. ........................................................ 12

III. CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*United States v. Abrahams*,
  575 F.2d 3 (1st Cir. 1978)............................................................................................5

*United States v. Byrd*,
  969 F.2d 106 (5th Cir. 1992) .......................................................................................7

*United States v. Calvillo-Trujillo*,
  23-CR-324, Dkt. No. 19 (C.D. Cal. July 11, 2023)............................................10

*United States v. Chen*,
  820 F. Supp. 1205 (N.D. Cal. 1992)..........................................................................9

*United States v. Figueroa-Alvarez*,
  681 F. Supp. 3d 1131 (D. Idaho 2023)...................................................................13

*United States v. Guevara-Santos*,
  21-CR-114-JFW, Dkt. No. 14 (C.D. Cal. May 12, 2021) .................................10

*United States v. Himler*,
  797 F.2d 156,160 (3d Cir. 1986) ...........................................................................4, 7

*United States v . Koenig*,
  912 F.2d 1190 (9th Cir. 1990) ....................................................................................3

*United States v. Loza*,
  21-CR-466, Dkt. No. 10 (C.D. Cal. Sept 8, 2021) .............................................10

*United States v. Martinez*,
  19-CR-654, Dkt. No. 16 (C.D. Cal. Nov 7, 2019) .............................................10

*United States v. Motamedi*,
  767 F.2d 1403 (9th Cir. 1985) ..........................................................................1, 7, 11

*United States v. Pavon-Andino*,
  Case No. 25-mj-00022-TPO, 2025 WL 446143 (D. Colo. Feb. 10, 2025) .........................................................................................................................10

*United States v. Ploof*,
  851 F.2d 7 (1st Cir. 1988)..............................................................................................7

*United States v. Ramirez*,
  21-CR-45-JLS, Dkt. No. 17 (C.D. Cal. Mar. 8, 2021) .....................................10

# TABLE OF AUTHORITIES

Page(s)

*United States v. Ramos*,
  19-CR-189-JAK, Dkt. No. 20 (C.D. Cal. July 9, 2019) ................................... 10

*United States v. Ruelas-Diaz*,
  2:25-mj-0076, Dkt. 19 ............................................................................... 3, 12

*United States v. Salerno*,
  481 U.S. 739 (1987) ................................................................................ 1, 8, 11

*United States v. Santos-Flores*,
  794 F.3d 1088 (9th Cir. 2015) ....................................................................... 10

*United States v. Schoepflin*,
  2:22-cr-00121-FMO, Dkt. 51 (C.D. Cal. 2022) ................................................ 8

*United States v. Tapia Bergara*,
  20-cr-186, Dkt. No. 19 (C.D. Cal. Dec. 1, 2020) ........................................... 10

*United States v. Townsend*,
  897 F.2d 989 (9th Cir. 1990) ........................................................................... 4

*United States v. Twine*,
  344 F.3d 987 (9th Cir. 2003) (per curiam) .................................................. 7, 8

*United States v. Villatoro-Ventura*,
  330 F. Supp. 3d 1118 (N.D. Iowa 2018) ........................................................ 13

*United States v. Winsor*,
  785 F.2d 755 (9th Cir. 1986) .......................................................................... 11

**Statutes**

18 U.S.C. § 3142 ............................................................................................ *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES
## I. INTRODUCTION AND RELEVANT FACTS

As the Supreme Court held in *United States v. Salerno*, 481 U.S. 739 (1987), "[i]n our society, liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *Id.* at 755. Accordingly, "federal law has traditionally provided that a person arrested for a non-capital offense shall be admitted to bail." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). "Only in rare circumstances should release be denied," and "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.*

On February 24, 2025, Magistrate Judge Charles F. Eick granted bond conditioned on a $10,000 signature bond by Mr. Ortiz's wife along with other conditions. *See* Dkt. 8, Bond Conditions. Mr. Ortiz was released on bond the next day, February 25. He met with his pretrial services officer on February 28, at which time he surrendered his Mexican passport. He has been in compliance with his bond conditions since his release.

In deciding the bail appeal before it, the Court must first determine if the government is entitled to a detention hearing at all on appeal. The only available basis here to hold a detention hearing is if the government establishes "a serious risk that [Mr. Ortiz] will flee." 18 U.S.C. § 3142(f)(2)(A). The government fails to make this showing, and accordingly is not entitled to a detention hearing to begin with. The Court should therefore adopt the reasonable conditions imposed by Judge Eick.

Moreover, the Court may not base a decision to detain Mr. Ortiz on a consideration of community safety. In light of the controlling caselaw discussed in the next section, the only legal basis on which the Court can order detention is risk of nonappearance. Danger is not a consideration under the framework of the Bail Reform Act.

This case does not present the type of "rare circumstance" in which detention is appropriate. The government's argument ignores the facts showing Mr. Ortiz does not

pose a risk of nonappearance or danger to the community. As detailed in the Pretrial Services Report, he has lived in Santa Barbara with his wife for at least six years. He and his wife have two young children together—a ten-year-old son and a four-year-old daughter. Mr. Ortiz supports his wife and children financially and emotionally. He works in construction and has been steadily employed for eight years. He has strong ties to the Central District generally and the community in Santa Barbara specifically. To the extent the government alleges he illegally returned to that community, those actions show there is not a serious risk that he will flee. Instead, he has made efforts to return to the jurisdiction to be with his family.

      The government points to a protective order that Mr. Ortiz's wife has against Mr. Ortiz. That protective order stems from a misdemeanor case from 2021. *See* Decl. of Counsel; Ex. A, 21CR06113 Docket. Undersigned counsel communicated with Mr. Ortiz's attorney on that case as well as a duty probation officer from Santa Barbara County, both of whom explained that the protective order currently in place only prohibits Mr. Ortiz from molesting, annoying, threatening, or harming his wife. *See* Decl. of Counsel. But the protective order does not prohibit Mr. Ortiz from living with his wife. In other words, as long as Mr. Ortiz acts peacefully toward his wife, his being with her does not violate the protective order. This is referred to as a MATH protective order, which is an acronym for molest, annoy, threaten, or harm. *See id.* A copy of Mr. Ortiz's conditions of probation and the protective order are attached as Exhibit B, with the pertinent MATH language highlighted. Because it is not a no-contact order, and instead is a MATH protective order, there is no issue with Mr. Ortiz's wife serving as a surety or with Mr. Ortiz living with her.

      In support of its request for detention, the government highlights Mr. Ortiz's status as an undocumented noncitizen. But, as discussed below, the Department of Justice's own published data shows that undocumented defendants granted pretrial release are actually less likely to fail to appear as compared to other defendants, with the failure to appear rate being about half that of other defendants.

2

Aside from Mr. Ortiz's immigration status, the government mainly relies on his dated convictions from an arrest more than 13 years ago, when Mr. Ortiz was just 22 years old. The government further points to the 2021 misdemeanor case that resulted in the protective order discussed above and a probationary sentence. Mr. Ortiz today has little in common with the person from 13 years ago or even three years ago in 2021, and now spends his time working hard and caring for his children.

Notably, while government applications to the district court for review of pretrial release orders are relatively uncommon in this district, the government has in the last week adopted a practice of regularly appealing release orders in illegal reentry cases. From what undersigned counsel has observed in duty court last week, the government requested a stay and then filed an appeal in every § 1326 case, including at least one other case before this Court. *See United States v. Ruelas-Diaz*, 2:25-mj-0076, Dkt. 19 (upholding grant of bond). Thus, while ordinarily the government may have at least some viable arguments for detention solely based on its having filed an application for review, that is not the case here, where the government now files applications for review as a matter of course in illegal reentry cases.

In short, because the government cannot meet the standard for detention, its request should be denied and Mr. Ortiz should remain released on bond, as Judge Eick correctly ordered.

## II. LEGAL ARGUMENT

**A.  This Court should not hold a detention hearing because Mr. Ortiz does not pose a serious risk of flight.**

Because this Court reviews Judge Eick's grant of bond de novo, it must first determine whether there should even be a detention hearing. *See United States v. Koenig*, 912 F.2d 1190, 1191-93 (9th Cir. 1990) (explaining that district court reviews magistrate judge's order de novo). The Bail Reform Act (BRA) splits the determination of detention versus release into two parts. The Court must first determine in a predicate hearing whether the government is entitled to a detention hearing at all. 18 U.S.C.

3

§ 3142(f). If the Court concludes the government is not entitled to a detention hearing, then the Court must order the person released on appropriate conditions. 18 U.S.C. § 3142(a), (b), (c). If the Court finds that the government is entitled to a detention hearing, then the Court holds such a hearing to determine whether there are conditions that can be imposed that would reasonably assure the person's appearance and the safety of the community. 18 U.S.C. § 3142(f).

Here, the only basis to move beyond the predicate hearing and hold a detention hearing is if the government establishes "a serious risk that [Mr. Ortiz] will flee." 18 U.S.C. § 3142(f)(2)(A). The BRA does not define the standard the government must meet to satisfy its obligation of demonstrating that a case involves a serious risk of flight. *See* 18 U.S.C. § 3142(f). But caselaw addressing the issue shows that the government must make some factual showing of a serious risk of flight. *See e.g., United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) (explaining that when only basis for detention is § 3142(f)(2)(A), defendant "may be detained only if the record supports a finding that he presents a serious risk of flight").

Requiring some threshold level of proof that a person actually poses a serious risk of flight makes sense since the purpose of the BRA—in accordance with the Due Process clause—is to allow release for most individuals charged with federal crimes. *See United States v. Townsend*, 897 F.2d 989, 993-94 (9th Cir. 1990) (noting the following three principles of the BRA: "1. Federal law has traditionally provided that a person arrested for a non-capital offense shall be admitted to bail. . . . 2. Only in rare cases should release be denied. . . . 3. Doubts regarding the propriety of release are to be resolved in favor of defendants.").

Further, § 3142(f)(2)(A)—the sole basis for a detention hearing here—is the only time the BRA uses the phrase "serious risk" of flight. Legislative history shows that this was intended to limit this provision's reach from swallowing up individuals who pose the more commonly-analyzed risk of nonappearance. *See* S. REP. NO. 225, 1983 WL 25404, at *12 ("Under subsection f(2), a pretrial detention hearing may be held" in

4

a case that involve "a serious risk that the defendant will flee" (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978) (holding that only a "rare case of extreme and unusual circumstances . . . justifies pretrial detention")).

Moreover, a plain reading of the BRA shows that serious risk of flight refers to a risk that the person will actually flee the jurisdiction; not just pose a risk of nonappearance. The word "flee" appears only twice in the BRA. The first is at § 3142(d)—which the government now invokes in § 1326 cases to justify temporary detention—and the other is at § 3142(f)(2)(A), which is the standard required to have a detention hearing in circumstances like Mr. Ortiz's case. That the word "flee" appears only in those two parts of the BRA suggests it refers to something more than simply a risk of nonappearance. Instead, the serious risk of flight language refers to the risk that the individual will actually flee—i.e., leave the jurisdiction.

And the emphasis on "serious" distinguishes the "true flight risks" who are likely to willfully flee with the intention of thwarting the judicial process from a "local absconder" (who intentionally fails to appear but remains in the jurisdiction) or a "low-cost non-appearance" (who *unintentionally* fails to appear). *See* Lauryn Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 724 (2017). Those who fall into the category of true flight risk justify a detention hearing; the other categories of people can be reasonably addressed by imposing conditions of release. *See id.*

Here, Mr. Ortiz does not pose a serious risk of flight. He has lived in Santa Barbara, in the Central District, for at least the last six years. He lives with his wife and two young children. He works in the district in construction. Even the government concedes Mr. Ortiz wants to be in the district: by the government's telling, Mr. Ortiz wanted so much to be in the district with his family that he illegally reentered. Thus, rather than show any evidence that Mr. Ortiz would flee the jurisdiction, even by the government's account Mr. Ortiz has risked his safety and liberty by returning to the district and will stay in the district as long as he is permitted to do so. Accordingly, the government cannot establish that Mr. Ortiz poses a serious risk of flight, and there is no

basis to hold a detention hearing. Instead, the Court should adopt the conditions of release set by Judge Eick.

**B.    The Court may not consider danger to the community in making a determination as to whether to grant Mr. Ortiz bail.**

Even if the government is entitled to a detention hearing, the Court cannot detain Mr. Ortiz based on a finding of danger to the community. Only three categories of defendants may be detained pretrial: 1) those charged with certain crimes Congress has deemed especially dangerous (18 U.S.C. § 3142(f)(1)); 2) those who pose a serious risk of flight (18 U.S.C. § 3142(f)(2)(A)); and 3) those who pose a serious risk of obstructing justice (18 U.S.C. § 3142(f)(2)(B)). *See Bail*, 50 Geo. L.J. Ann. Rev. Crim. Proc. 394, 397 (2021) ("If at the Initial Appearance the government requests that the defendant be detained, the judge is only authorized to hold a detention hearing and detain the defendant if one of the factors in § 3142(f)(1) or (f)(2) is satisfied."); S. REP. NO. 225, 1983 WL 25404, at *20 ("Because detention may be ordered under Section 3142(e) only after a detention hearing pursuant to subsection (f), the requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial.").

The government moved for a detention hearing in this case on the basis that Mr. Ortiz poses a serious risk of flight under 18 U.S.C. § 3142(f)(2)(A). Dkt 5. In such a case, if the Court finds that the government has met its burden of demonstrating a serious risk of flight, the Court must hold a detention hearing and consider whether there are conditions of release that will reasonably assure the appearance of the person. 18 U.S.C. § 3142(f)(2). If there are, then the Court must order the person released on such conditions. If there are not, then the Court must order the person detained. *Id.*

Caselaw establishes that, where, as here, the government's entitlement to a detention hearing arises only from a serious risk of flight under Section 3142(f)(2)(A),

the Court cannot consider a person's dangerousness in making that bail determination.[1] *See United States v. Twine*, 344 F.3d 987, 987-88 (9th Cir. 2003) (per curiam) (reversing detention order based on dangerousness finding in a case charging defendant with being a felon in possession of a firearm because it was not a crime covered by 18 U.S.C. § 3142(f)(1)); *United States v. Motamedi*, 767 F.2d 1403, 1404 (9th Cir. 1984) ("Because the Government has failed to establish by a preponderance of the evidence that Motamedi poses a flight risk, the [government's] motion for reconsideration [of the Ninth Circuit's reversal of a district court's pretrial detention order] must be denied."); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("A [detention] hearing can be held only if one of the six circumstances listed in (f)(1) and (2) is present[.] . . . [A] defendant's threat to the safety of other persons or to the community, standing alone, will not justify pre-trial detention."); *United States v. Ploof*, 851 F.2d 7, 10-11 (1st Cir. 1988) ("[W]here detention is based on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1)."); *United States v. Himler*, 797 F.2d 156,160 (3d Cir. 1986) ("Mr. Himler's case does not involve any of the offenses specified in subsection (f)(1), nor has there been any claim that he would attempt to obstruct justice or intimidate a witness or juror. Accordingly, we hold that the statute does not authorize the detention of the defendant based on danger to the community[.] . . . He may be detained only if the record supports a finding that he presents a serious risk of flight.").

Orders from fellow judges in the district have likewise concluded that danger to the community is not an appropriate consideration when the detention hearing is based solely on serious risk of flight. For example, in *United States v. Nwabueze*, retired

---

[1] In Section 3142(f)(2) cases, the Court may consider community safety in determining which conditions of release to impose, but it may not deny release based on such a consideration. *Compare* 18 U.S.C. § 3142(f)(2) (permitting a detention hearing in a case that presents a serious risk of flight) *with* 18 U.S.C. § 3142(c) (permitting the Court to set conditions designed to assuage risk of danger).

7

District Judge Margaret M. Morrow concluded that "*Twine* stands for the proposition that a court may only order pretrial detention under the Bail Reform Act based on the danger a defendant poses to the community if the defendant is charged with a crime described in § 3142(f)(1)." Case No. 2:10-cr-00411-MMM, Dkt 36, at 11 (C.D. Cal. 2010), order attached here as Exhibit C. And Magistrate Judge Margo A. Rocconi more recently came to the same conclusion. *See United States v. Schoepflin*, 2:22-cr-00121-FMO, Dkt. 51, at 6 (C.D. Cal. 2022), order attached here as Exhibit D.

The legislative history of the BRA further supports this conclusion: before 1984, dangerousness was not an appropriate consideration for pretrial detention. Congress passed the BRA in part to address crimes committed by individuals on federal pretrial release. Referring to Subsection (f)(2), the Senate Report accompanying the BRA notes that "there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this limited group of offenders that the Courts must be given the power to deny release pending trial." S. REP. NO. 225, 1983 WL 25404, at *6-7.

As this history shows, Congress carefully limited the instances in which a Court could detain based on danger to those enumerated in § 3142(f)(1). Indeed, the Supreme Court recognized in *Salerno* that "the Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." *Salerno*, 481 U.S. at 747. If a person is not charged with a crime listed in § 3142(f)(1), the Court may not consider community dangerousness in deciding whether to detain that person.

//
//
//
//

8

1  **C.   The government cannot show by a preponderance of the evidence that**
2  **no combination of conditions can reasonably assure Mr. Ortiz's**
3  **appearance.**

Because danger to the community is not an appropriate consideration under the BRA under the circumstances of Mr. Ortiz's case, the only viable basis for detention is that Mr. Ortiz poses a risk of nonappearance. *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) ("Section 3142 does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight."). Here, Mr. Ortiz does not pose such a risk. To the contrary, multiple factors here support bond under the same conditions imposed by Judge Eick.

Mr. Ortiz has substantial "family ties" anchoring him to this district. 18 U.S.C. § 3142(g)(3)(A). His wife and two young children live in Santa Barbara. They are his motivation for remaining in Santa Barbara and in the district, and he will continue to remain here while out on bond. He has a stable residence and established record of "residence in the community." 18 U.S.C. § 3142(g)(3)(A). Specifically, he has lived for at least the last six years in Santa Barbara with his family. Further, Mr. Ortiz has a strong record of "employment" in the district, having worked for the past eight years in the district in construction. 18 U.S.C. § 3142(g)(3)(A).

In addition, Mr. Ortiz has already posted an unsecured affidavit of surety in the amount of $10,000 from his wife, Yara Morales Gonzalez. To the extent the government argues that a $10,000 signature bond is insufficient, the government wrongly ignores the BRA's command that the Court "may not impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2). Given Ms. Gonzalez's modest financial resources, a higher bail amount would result in pretrial detention based on a financial condition, which would be improper.

Mr. Ortiz was released from custody on February 25. He met with his pretrial services officer last Friday, February 28, at which time he surrendered his Mexican

passport. Thus, all the conditions of bail have been satisfied, and Mr. Ortiz has remained in compliance. This further supports the conclusion that he should remain on bond under the same conditions Judge Eick imposed.

Moreover, the Court should reject the government's argument that Mr. Ortiz's "foreign citizenship" shows he is a flight risk because "[a]ny idea that immigrant defendants are more likely to flee than non-immigrant defendants is simply not supported by any concrete data." *United States v. Pavon-Andino*, Case No. 25-mj-00022-TPO, 2025 WL 446143, at *3 (D. Colo. Feb. 10, 2025). "In fact, empirical evidence" from the Department of Justice's own published data "suggests exactly the opposite: according to a March 2022 United States Department of Justice Special Report, [undocumented] defendants granted pretrial release were *less* likely to fail to appear or violate conditions of release than [non-undocumented] defendants." *Id.* (emphasis in original and internal quotation marks omitted).[2]

Specifically, for the years 2011-2018, the failure to appear rate in the United States for undocumented non-U.S. citizens (based on 28,472 released defendants) was 0.5%, which is *half* the 1.0% rate for all defendants (based on 241,164 released defendants). Ex. E, *Pretrial Release and Misconduct in Federal District Courts, Fiscal Years 2011-18*, U.S. Dept. of Justice – Office of Justice Programs (March 2022), at 11 (Table 9). Undersigned counsel understands this report to be the most current available data published by the Department of Justice on this subject.

---

[2] Additionally, "immigration status is not a listed factor" in the Bail Reform Act. *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). And it is common in this district for defendants in illegal reentry cases to be released on bond. *See, e.g., United States v. Ramos*, 19-CR-189-JAK, Dkt. No. 20 (C.D. Cal. July 9, 2019); *United States v. Guevara-Santos*, 21-CR-114-JFW, Dkt. No. 14 (C.D. Cal. May 12, 2021); *United States v. Martinez*, 19-CR-654, Dkt. No. 16 (C.D. Cal. Nov 7, 2019); *United States v. Tapia Bergara*, 20-cr-186, Dkt. No. 19 (C.D. Cal. Dec. 1, 2020); *United States v. Ramirez*, 21-CR-45-JLS, Dkt. No. 17 (C.D. Cal. Mar. 8, 2021); *United States v. Loza*, 21-CR-466, Dkt. No. 10 (C.D. Cal. Sept 8, 2021); *United States v. Calvillo-Trujillo*, 23-CR-324, Dkt. No. 19 (C.D. Cal. July 11, 2023).

The government also relies on the unproven allegations in the complaint as a purported basis for detention. But Mr. Ortiz is presumed innocent and, moreover, illegal reentry cases are also often vulnerable to attack through motion practice. Further, even if the Court believes the weight of the evidence against Mr. Ortiz is strong, the Ninth Circuit has made clear this is the "least important of the various factors" under consideration. *Motamedi*, 767 F.2d at 1408; *see also United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986) (same).

The government's assertion that Mr. Ortiz faces a 20-year statutory maximum sentence if convicted overstates his likely sentencing exposure if convicted. As the government is well aware, the Sentencing Guidelines are far more predictive of the custodial sentence a defendant faces if convicted. A preliminary look at the Guidelines suggest that Mr. Ortiz's exposure if convicted is far lower.

For all these reasons, Mr. Ortiz is not a flight risk. The bond conditions set by Judge Eick will reasonably assure his appearance and this Court should leave those conditions in place.

**D.  Even if danger to the community were a proper consideration, the government cannot show with clear and convincing evidence that no combination of conditions can reasonably assure the safety of the community.**

As discussed above, the Court is not permitted to weigh danger to the community as part of the analysis in light of the charges here. But even if danger were an appropriate consideration, the government cannot prove, by clear and convincing evidence, that no condition or combination of conditions can reasonably assure the safety of the community. *Salerno*, 481 U.S. at 741, 750-52. Thus, even if the Court does take danger into account, it should still keep the current bond conditions in place.

Mr. Ortiz today is a family man who has strong "character." 18 U.S.C. § 3142(g)(3)(A). He works hard to provide and care for his ten-year-old son and four-year-old daughter.

11

1 Although he has some criminal history, his only felony conviction and one of his
2 misdemeanor convictions are both from over 13 years ago. Mr. Ortiz today has little in
3 common with the person he was back in 2011. And even his more recent misdemeanor
4 conduct is over three years old, from 2021. Since that conviction, Mr. Ortiz has
5 remained on the right path. The proof is that he successfully completed all the terms of
6 his probation and was ultimately transferred to summary probation because of that
7 compliance. *See* Ex. A; Decl. of Counsel. He has had no issues in almost 30 months of
8 supervision, and he will continue to do well on pretrial release here.

For the reasons above, the government has fallen far short of showing by clear and convincing evidence that Mr. Ortiz presents a danger to the community. Accordingly, release is warranted under the conditions set by Judge Eick.

**E.  Temporary detention is not appropriate either and cannot form a basis for remanding Mr. Ortiz back to custody.**

Based on the government's brief in support of its appeal from Judge Eick's bond order, it does not appear that the government is still seeking ten days of temporary detention under § 3142(d). Dkt. 20. But to the extent the government is requesting a ten-day detention, the Court should not temporarily detain Mr. Ortiz.

First, at this point it has been seven days since Mr. Ortiz made his initial appearance. And the date the Court set for a hearing on this appeal falls on the tenth day since that initial appearance. So by the time of the hearing, ten days will have passed, and ICE will have had the benefit of those ten days to decide whether to take Mr. Ortiz into immigration custody.

Second, for the reasons this Court articulated in a recent order upholding a grant of bond in *United States v. Ruelas-Diaz*, the ten-day detention provision under § 3142(d) does not apply under the factual scenario present here. *See United States v. Ruelas-Diaz*, 2:25-mj-00765, Dkt. 19, at 5-8. This Court's order from *Ruelas-Diaz* is attached here as Exhibit F. "Where, as here, immigration authorities bring the defendant to the attention of federal prosecutors, and not the other way around, the

temporary detention provisions of § 3142(d) do not apply." *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1136 n.3 (D. Idaho 2023)). That is so because immigration officials are "already aware of [the defendant]'s status as an [non-citizen], as it was the entity that conveyed him to Marshal custody." *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1135 (N.D. Iowa 2018). For those reasons, as well as the other reasoning articulated by this Court in *Ruelas-Diaz*, the temporary-detention provision under § 3142(d) does not apply here and cannot justify a temporary detention.

### III. CONCLUSION

For the reasons above, Mr. Ortiz respectfully requests that the Court deny the government's application to review the grant of bail and order Mr. Ortiz to remain released on bond subject to the conditions set by Judge Eick.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: March 3, 2025        By /s/ Howard Shneider
Howard Shneider
Deputy Federal Public Defender
Attorney for Juan Miranda Ortiz